IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Insurance King Agency, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 20-cv-50023 |
| v. | ) | |
| | ) | Honorable Iain D. Johnston |
| Accurate Insurance Services, Inc., Save-A-Lot | ) | Magistrate Judge Lisa A. Jensen |
| Insurance Services, LLC, Accurate Payment Plan, | ) | |
| Inc., Michael Zubi, and Haneen Ghouleh | ) | **SECOND AMENDED** |
| | ) | **COMPLAINT** |
| Defendants. | | |

**SECOND AMENDED COMPLAINT**

Plaintiff, Insurance King Agency, Inc. ("Insurance King"), by its attorneys, Lewis Brisbois Bisgaard & Smith LLP, for its Second Amended Complaint against Accurate Insurance Services, Inc. ("Accurate"), Save-A-Lot Insurance Services, LLC ("Save-A-Lot"), Accurate Payment Plan, Inc. ("Accurate Payment"), Michael Zubi ("Zubi"), and Haneen Ghouleh ("Ghouleh") (collectively, "Defendants") alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* ("Lanham Act") for trademark counterfeiting, trademark infringement (15 U.S.C. § 1114 and § 1125(a)), and false and/or deceptive advertising (15 U.S.C. § 1125(a)); the United States Copyright Act (17 U.S.C. § 101, *et seq.*) for copyright infringement; the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); the

1

Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*); and common law unfair competition.

## PARTIES

2. Insurance King is an Illinois corporation with its principal place of business located in Rockford, Illinois.

3. Defendant Accurate Insurance Services, Inc., is an Illinois corporation with its principal place of business at 9115 S. Harlem Avenue, Bridgeview, Illinois 60455.

4. Defendant Save-A-Lot Insurance Services, LLC is an Illinois corporation with its principal place of business at 1111 W 22nd Street, Suite 610, Oak Brook, IL 60523.

5. Defendant Accurate Payment Plan, Inc. is an Illinois corporation with its principal place of business at 1111 W 22nd Street, Suite 610, Oak Brook, IL 60523.

6. Defendant Michael Zubi is the President and owner of Accurate and, on information and belief, an owner and officer of Accurate Payment and Save-A-Lot. *See* **Exhibits A**, **B**, and **C**.

7. Defendant Haneen Ghouleh is the wife of Michael Zubi, the owner and officer of Accurate and Accurate Payment, and the President and owner of Save-A-Lot. *See* **Exhibits C**, **D**, and **E**.

8. At all times relevant to this action, Ghouleh and Zubi were agents, servants, employees, partners, or joint venturers of Accurate, Accurate Payment, and Save-A-Lot and acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the acts alleged herein related to Accurate, Accurate Payment, and Save-A-Lot .

2

4813-8452-6802.1

9.     Plaintiff is informed and believes and thereon alleges that there exists, and at all times relevant existed, a unity of interest and ownership among Accurate, Accurate Payment, and Save-A-Lot and Ghouleh and Zubi such that any individuality and separateness among each of them have ceased, and Ghouleh and Zubi are the alter egos of Accurate, Accurate Payment, and Save-A-Lot.  Adherence to the fiction of separate existence between Ghouleh and Zubi and Accurate, Accurate Payment, and Save-A-Lot would permit an abuse of the corporate privilege, sanction a fraud and promote injustice.  On information and belief, Ghouleh and Zubi have a material interest in the ownership, control, governance, management, finances and/or assets of Accurate, Accurate Payment, and Save-A-Lot, and operate and control Accurate, Accurate Payment, and Save-A-Lot in a manner establishing that there is no legal distinction between Ghouleh and Zubi as individuals and Accurate, Accurate Payment, and Save-A-Lot as entities, that Ghouleh and Zubi are using Accurate, Accurate Payment, and Save-A-Lot to present a veneer of business legitimacy, while extracting funds from these entities for their personal use.

10.     On information and belief, at all times relevant herein, Accurate, Accurate Payment, and Save-A-Lot were mere shells and conduits to shield Ghouleh and Zubi from personal liability, but which they used to satisfy personal obligations.

11.     On information and belief, Ghouleh and Zubi completely controlled, dominated, managed, and operated Accurate, Accurate Payment, and Save-A-Lot to suit their individual convenience.

12.     On information and belief, at the direction of Ghouleh and Zubi, Accurate, Accurate Payment, and Save-A-Lot failed to follow corporate formalities.

3

13.     The Court in equity should pierce the corporate veil in order to avoid injustice and prevent Ghouleh's and Zubi's fraud.

## JURISDICTION AND VENUE

14.     This action arises under 15 U.S.C. §§ 1114 and 1125 (a) & (d), 17 U.S.C. § 101, *et seq.*, and under the statutory and common law of the State of Illinois.  This Court has subject matter over these claims pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121 (Lanham Act claims), 17 U.S.C. § 101, *et seq* (Copyright Act claim), and 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

15.     Venue is proper in this District under 28 U.S.C. §1391 because Defendants reside within this District, because the Defendants are subject to the Court's personal jurisdiction with respect to this action, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## GENERAL ALLEGATIONS

**<u>Insurance King</u>**

16.     Insurance King has helped drivers to "drive legal for less" since 2001.  Insurance King writes insurance policies in several mid-western and southern states, including Illinois.  Its goal is to provide affordable insurance for all, including drivers with an imperfect driving record and those who might otherwise not be able to afford insurance or insurance-related coverage.

17.     Insurance King is one of the fastest-growing auto insurance agencies in the country and enjoys a strong online presence, in addition to having established its brand in multiple states through direct mailers, billboards, social media, radio and TV advertising. Insurance King is also a prominent NASCAR sponsor.

4

18.     Since at least April 1, 2000, Insurance King has been using the INSURANCE KING mark in interstate commerce in connection with insurance brokerage services.  Insurance King has also registered the INSURANCE KING mark with the United States Patent and Trademark Office.  A copy of Reg. No. 4,628,341 for the INSURANCE KING mark is attached as **Exhibit F** ("Insurance King Registration").

19.     Insurance King is also the owner of a copyright registration (Registration No. VA 2-222-871) for the Insurance King Mascot displayed in its advertisements ("Insurance King Mascot Copyright").  A true and accurate copy of the certificate of registration for Insurance King Mascot from the United States Copyright Office is attached as **Exhibit G**.  The Insurance King Mascot is displayed below:



20.     Defendants had actual notice of the INSURANCE KING mark.  In addition, Defendants had constructive notice of the INSURANCE KING mark, because the Registration for the INSURANCE KING mark was published for opposition and registered two years or more before the date of this Complaint.

21.     In addition, Defendants had access to the Insurance King Mascot by virtue of its display on the Insurance King website and in billboard advertisements.

5

22. Insurance King has expended considerable resources in building the goodwill associated with the INSURANCE KING mark, in connection with the insurance services provided thereunder.

23. Insurance King has continuously marketed its services throughout the United States, including this judicial district. Based on its consistent and extensive use, the INSURANCE KING mark has become widely and favorably known, and has acquired extensive goodwill.

24. Insurance King is currently, and at all relevant times hereto has been, the exclusive owner of all property rights in the INSURANCE KING mark.

25. Under the Lanham Act, Insurance King has exclusive rights to the INSURANCE KING mark with respect to the services identified in the Insurance King Registration.

**Accurate, Accurate Payment, and Save-A-Lot Overview**

26. Save-A-Lot and Accurate are insurance agencies that compete directly with Insurance King.

27. Accurate Payment is an insurance finance company.

28. The key individuals who manage and control Save-A-Lot, Accurate, and Accurate Payment are Michael Zubi and Haneen Ghouleh.

29. Michael Zubi and Haneen Ghouleh are married, but are currently going through divorce proceedings.

30. Based on published information, Ms. Ghouleh has been penalized at least four times by three different states by state insurance boards resulting from her actions as an employee of Accurate.

6

31.     Upon information and belief, while Save-A-Lot is a separate legal entity from Accurate, Save-A-Lot is really nothing more than a DBA for Accurate, or vice-versa.  For example, the National Association of Insurance Commissions' database lists Accurate Insurance Services as the DBA of Save-A-Lot.  *See* **Exhibit D**.

32.     An investigation revealed that Save-A-Lot advertises toll-free phone numbers that are answered by Accurate employees.  Moreover, insurance policies ordered from Save-A-Lot by an investigator who was retained by Insurance King contain no reference to Save-A-Lot and only reference Accurate Insurance.  Consumers are not made aware of the fact that these companies are related, affiliated, or under common ownership.  *See* **Exhibit H**.

**Accurate Online Advertisements**

33.     Accurate and Save-A-Lot have a history of using false and misleading advertising to confuse consumers.

34.     Some of that advertising has been specifically targeted to reach consumers who might otherwise have purchased an insurance policy through Insurance King.  For example, Accurate began a pay-per-click ("PPC") advertising campaign aimed at diverting customers from Insurance King to Accurate.  In PPC advertising, the advertiser pays a fee each time an Internet user clicks on one of the advertiser's advertisements.  To determine which consumers see the advertisement, the advertiser must select keywords used to trigger the advertisement.  The advertiser's ads then appear when internet users include the keywords into a search query.

35.     In its campaign to divert consumers away from Insurance King, Accurate purchased the INSURANCE KING mark as keyword search term in its PPC advertising.  Moreover, it used the INSURANCE KING mark in the advertisement itself.  In other words,

7

4813-8452-6802.1

when a person searched "Insurance King" on the web, Accurate's sponsored ad appeared and within the description of the ad that is visible to an internet user, even before the internet user clicks on the ad, the INSURANCE KING mark appeared.

36.     An example of these types of advertisements is listed below:



37.     While Accurate was using the INSURANCE KING Mark in its online advertisements, Accurate's telephone operators told consumers that Accurate and Insurance King were one and the same.  For example, a potential customer who searched for "Insurance King" online and called the phone number from the resulting ad (which, unbeknownst to the potential customer, was an ad for Accurate) asked the representative who answered the call, "Is this Insurance King?"  The representative responded "Yes."  *See* **Exhibit I**.

38.     At some point, while continuing to purchase the INSURANCE KING mark as a keyword term, Accurate online ads were modified to transpose the words INSURANCE KING to KING OF INSURANCE.

39.     This minor difference does not change the overall commercial impression conveyed to the public.

8

40.    An example of this revised online advertisement is listed below:



41.    Notwithstanding the slight change in Accurate's online advertising, Accurate is intentionally infringing the INSURANCE KING mark to redirect consumers searching for Insurance King's website to Accurate's website.

**Accurate and Save-A-Lot Websites**

42.    Accurate's website falsely states: "Accurate Auto has the lowest SR22 Insurance rates." *See* **Exhibit J**.  Accurate's claim of the lowest SR-22 rates is literally false and is likely to deceive consumers into believing that no other company can provide an SR-22 for a lower price.

9

43. On the same webpage where Accurate makes the literally false claim that it has the lowest SR-22 insurance rates, Accurate makes the statement, "We guarantee you won't be disappointed with our results." *See* **Exhibit J**.

44. According to Federal Trade Commission regulations, a seller may make a satisfaction guarantee representation in advertising only if the seller refunds the full purchase price of the advertised product at the purchaser's request. *See* 16 C.F.R. 239.3.

45. Based on an investigation conducted into Accurate's refund policies, Accurate does not offer a full refund any time a consumer requests one. In fact, rather than refund a consumer who is dissatisfied with Accurate's results, Accurate charges a cancellation fee if a consumer seeks to walk away from an Accurate-issued policy. *See* **Exhibit H**. This deceptive practice of offering a satisfaction guarantee is intended to induce consumers to purchase an insurance policy through Accurate.

10

46.     Accurate and Save-A-Lot have further deceived consumers via the "Testimonials & Customers Reviews" page on their websites, which contain verbatim or near-verbatim reviews.

47.     Accurate's "Testimonials & Customers Reviews" page contains the following purported reviews:

"A company that helps you and explains every part of the policy from beginning to end. That's what accurate did. I received my policy and ID cards on the spot and saved some money also."
– **Margaret K. Alsip, IL**

"I have had insurance with Accurate for over 5 years. What a great company to work with. The employees are great and very friendly."
– **Ken G. Chicago, IL**

"Totally happy with the cheap rates. They're as cheap as it gets around here, rate wise for insurance needs."
– **Emmy S. Oak Lawn, IL**

"I've been with Accurate Auto Insurance Agency for over six years and when I had an accident they helped me with the claim. They are polite and my insurance rate is the best I could find. Good people working there, they care about keeping customers happy."
– **Michael Z. Chicago, IL**

*See* **Exhibit K**.

48.     Save-A-Lot's "Testimonials & Customers Reviews" page contains the following purported reviews:

"A company that helps you and explains every part of the policy from beginning to end. That's what accurate did. I received my policy and ID cards on the spot and saved some money also."
– **Margaret K. Alsip, IL**

11

"I have had insurance with SaveALot for over 5 years. What a great company to work with. The employees are great and very friendly."
– **Ken G. Chicago, IL**

"Totally happy with the cheap rates. They're as cheap as it gets around here, rate wise for insurance needs."
– **Emmy S. Oak Lawn, IL**

"I've been with SaveALot Auto Insurance Agency for over six years and when I had an accident they helped me with the claim. They are polite and my insurance rate is the best I could find. Good people working there, they care about keeping customers happy."
– **Michael Z. Chicago, IL**

*See* **Exhibit L**.

49.     By publishing these statements, one or both of these defendants is engaging in a deceptive act or practice intended to cause consumers to rely on the deception and believe that both Accurate and Save-A-Lot obtained these reviews from satisfied customers.

**Accurate and Save-A-Lot Billboard Advertisements**

50.     Accurate and Save-A-Lot have engaged in a billboard advertising campaign aimed at disparaging Insurance King.

51.     The following billboard advertisement was placed on a billboard directly across the street from Insurance King's headquarters:



52.     Importantly, the billboard advertisement utilizes the image of a light and dark yellow "King" wearing a yellow pointed crown and surrounded by yellow hair that is substantially similar to the Insurance King Mascot, especially when viewed from a distance from the billboard (the "Infringing Design"):



53.     Consumers who see this billboard, across the street from Insurance King's principal place of business, will clearly understand the ad to mean that Insurance King's rates are significantly higher than Accurate's auto insurance rates.

54.     In addition to the Accurate billboard, Save-A-Lot has posted a nearly identical billboard, which is identified below:



55.     In addition to the false and disparaging statement "Don't Pay a King's Ransom," misleading consumers to believe that Insurance King's auto insurance rates are substantially

13

higher than Accurate's or Save-A-Lot's rates for auto insurance, the signs also make several intentionally false and misleading statements.

56. **First**, the dominant portion of these billboards prominently advertise AUTO INSURANCE in the center of the advertisements. However, the advertisement is not really for auto insurance. Instead, the advertisement is for non-owner SR-22 Certification.

57. An SR-22 Certification is a form that is filed with the State; SR-22 is not a type of auto insurance. The SR-22 Certificate is a certificate of financial responsibility, which verifies that the named individual is carrying at least the state-mandated amount of insurance. An SR-22 Certification is a financial responsibility certification designed to protect others. It ensures that those who might not otherwise carry the coverage necessary to pay for damages caused by an accident are held responsible when they are found to be at fault. Said another way, an SR-22 Certification operates as proof that one is covered by an appropriate level of auto insurance, but the SR-22 Certification itself is not auto insurance and is not an auto insurance policy.

58. Usually, a court will order someone to obtain an SR-22 Certification if they are issued a ticket for driving a car without insurance. Often, in these circumstances, the driver's license would be suspended until the SR-22 Certification is filed.

59. The only way to obtain an SR-22 Certification is from an insurance company. If someone does not own an automobile (e.g., they drive a friend's car), the person can purchase an SR-22 compliant "non-owner" policy. This is the type of policy that is advertised in Accurate's and Save-A-Lot's billboards.

60. A non-owner policy does not cover any specific vehicle – it is not, therefore, auto insurance. It is, in contrast, insurance that serve as protection from liability for the operation of a

14

vehicle that the insured does not own. In fact, the SR-22 "non-owner" policy comes with an exclusion for any owned autos. Generally, SR-22 "non-owner" policies are much less expensive than auto insurance policies.

61.     The SR-22 can be required for a variety of reasons, depending on where the driver lives, including but not limited to, DUI or DWI or other major alcohol violation convictions, serious moving violation convictions such as reckless or negligent driving, several traffic offenses in a short time period, driving without insurance convictions, being involved in an accident while driving without insurance, being caught by the state not carrying car insurance on your registered vehicle, and a requirement to reinstate your driver's license after a suspension or revocation.

62.     Importantly, a majority of consumers have likely have never heard of SR-22s and, therefore, the likely consumer will simply perceive Accurate's and Save-A-Lot's billboards as offering auto insurance for as low as $19/month, which is not offered by either Accurate or Save-A-Lot at that rate. In fact, insurance companies that offer SR-22s acknowledge that most people in the United States likely have never heard of SR-22 policies. Only those consumers that have been ordered to obtain an SR-22 Certification because of a violation of traffic rules are aware of this terminology. For example, these sites state, "Most drivers have never heard of SR22 insurance," "If you're like most people, you've probably never heard of SR-22 insurance," "Chances are if you've never heard of SR22 insurance, you probably don't need it. You only need SR22 insurance if you have been required to get it by the state you live in." *See* website printouts in **Exhibit M**.

15

4813-8452-6802.1

63.    Accordingly, knowing that most consumers have never heard of an SR-22, the billboard advertisements were designed by Defendants to intentionally mislead consumers to believe that Accurate and Save-A-Lot offer auto insurance for as low as $19/month – they do not.  Thus, the billboard is literally false.

64.    **Second**, even if the advertisement is interpreted by the minority of consumers that recognize the term "SR-22" as offering *only* SR-22s, Insurance King offers comparable prices for SR-22s.  Therefore, the claim that consumers will pay more -- "a ransom" -- if they purchase an SR-22 from Insurance King is literally false or at least false by necessary implication or will be perceived by likely consumers as false and/or misleading.

65.    **Third**, the Save-A-Lot sign prominently states that there are no AGENCY FEES or POLICY FEES.  These statements, while technically true as to the purchase of an SR-22, mislead consumers to believe that there are no additional fees beyond the monthly charge.  In fact, consumers are charged a "Service Fee" of $75 for SR-22 policies.  *See* **Exhibit H**.  Accordingly, even if there are technically no Agency Fees or Policy Fees to purchase an SR-22 from Save-A-Lot, the advertisement is intentionally ambiguous such that it implicitly conveys a false impression, is misleading in context, and/or is likely to deceive consumers.

66.    **Fourth**, the Save-A-Lot sign is misleading because it leads consumers to believe that a company named "Save-A-Lot" is actually offering the services contained in the billboard advertisement.  In truth, based on an investigation, it appears that the services are really being offered by Accurate.  *See* **Exhibit H**.  Accordingly, if a consumer has a bad experience with Accurate or reads negative comments online about the company and sees a sign by another

16

4813-8452-6802.1

company, Save-A-Lot, offering the same pricing as Accurate, they will be deceived into buying a service from Save-A-Lot not knowing that it is actually Accurate.

67. **Fifth**, the Save-A-Lot sign misleads consumers to believe that Save-A-Lot does not charge Policy Fees for <u>auto insurance</u>. In fact, consumers are charged a policy fee for auto insurance policies purchased through Save-A-Lot. *See* **Exhibit H**. Accordingly, this claim is literally false or intentionally ambiguous such that it implicitly conveys a false impression, is misleading in context, and is likely to deceive consumers.

**<u>Accurate Payment Plan, Inc. – The Thread That Ties The Fraud Together</u>**

68. Accurate Payment, which is owned by Ghouleh and Zubi, is a silent partner in the fraud perpetrated on consumers. It has no website and does not advertise.

69. An investigation has revealed that when a consumer contacts either Accurate or Save-A-Lot for auto insurance, it is not disclosed to them that they are actually going to be contracting with Accurate Payment to finance their insurance purchase. *See* **Exhibit H**. Defendants also do not disclose to consumers the exorbitant rate of interest the consumer will be charged, the hefty cancellation fees they will incur, the policy fee they will incur, or that the insurance coverage they receive could be split between two separate insurance companies (thus doubling the per-policy fees charged to the consumer).

70. According to the investigation, when a consumer contacts either Accurate or Save-A-Lot for auto insurance, they are asked to provide the operator with information about themselves. *See* **Exhibit H**. After the intake of information, the operator advises the consumer of an initial payment requirement and a monthly premium. The operator obtains the credit card information over the phone and charges for the initial payment.

4813-8452-6802.1

71.     At no time does the operator tell the consumer that he or she would be entering a financing agreement or that he or she would be incurring additional fees that were not part of the policy coverage costs. Moreover, there is no mention that the policy is subject to a policy cancellation fee, service fees, policy fees, or any other fee. Moreover, there is no mention of charges for roadside assistance fees. *See* **Exhibit H**.

72.     After the credit card is charged, Accurate or Save-A-Lot send an email to the consumer seeking electronic signature on a series of documents.

73.     After a few days, a packet arrives from Accurate Payment; not Accurate. Consumers are not made aware of the fact that Accurate Payment is a different company. Moreover, it is intentionally misleading because the companies share the same ACCURATE name and the same address. The packet contains an Accurate Payment finance agreement and payment coupons for the insurance policy purchased through Accurate. A sample packet is attached as **Exhibit N**.

74.     In addition to the Policy Fees and Service Fees charged to consumers by Accurate, Accurate Payment also charges an outrageous APR of 32.64%, a late charge of five percent (5%) of any installment, a $100 cancellation fee, two $30 charges for roadside assistance for a company with the same address as Accurate and Save-A-Lot, and a $5 credit card processing fee. *See* **Exhibit N**. The insured that requested the insurance contained in the sample packet never asked for roadside assistance.

75.     To make matters worse, in certain instances, Accurate signs up two insurance companies for the same insured. One insurance company for liability coverage and a second insurance policy for comprehensive and collision coverage. The twist is that the insured is now

18

4813-8452-6802.1

charged a <u>second</u> Service Fee of $75 and a <u>second</u> Policy Fee of $30 by Accurate. Upon information and belief, if a consumer realizes they are being overcharged and tries to cancel the policy, Accurate and Accurate Payment keep the money paid in the first installment and apply it to outstanding Service Fees and Cancellation Fees.

## COUNT I
## TRADEMARK COUNTERFEITING
### (Lanham Act Section 32 (15 U.S.C. 1114)
### (Accurate, Zubi, and Ghouleh: "Count I Defendants")

76. Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

77. Insurance King owns all rights, title and interest in and to the INSURANCE KING mark and the Insurance King Registration, and the mark is protected under the Lanham Act.

78. The INSURANCE KING mark and the goodwill of the business associated with it in the United States is of great value, highly distinctive, and has become associated in the mind of the public with insurance services of the high quality and reputation.

79. Without Insurance King's authorization or consent, and with knowledge of Insurance King's well-known prior rights in the INSURANCE KING mark, the Count I Defendants reproduced, counterfeited, copied, and sold counterfeit services to the consuming public of the United States in direct competition with Insurance King in or affecting interstate commerce.

80. The Count I Defendants have counterfeited and infringed the INSURANCE KING mark. The Count I Defendants' use of the INSURANCE KING mark was without Insurance King's authorization or consent.

19

4813-8452-6802.1

81.     The Count I Defendants' use of the INSURANCE KING mark in their online advertising caused confusion, mistake, and deception among the general purchasing public as to the origin of Accurate's services, and likely deceived the public into believing that Accurate's services originate from, are associated with, or are otherwise authorized by Insurance King, all to the damage and detriment of Insurance King's reputation, goodwill, and profits.  Accordingly, the Count I Defendants used reproductions, counterfeits, and copies of the federally registered INSURANCE KING mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

82.     The Count I Defendants' unauthorized use of the INSURANCE KING mark as set forth above has resulted in the Count I Defendants unfairly benefitting from Insurance King's advertising and promotion, and profiting from Insurance King's reputation and its registered INSURANCE KING mark, to the substantial and irreparable injury of the public, Insurance King, and the INSURANCE KING mark, and the substantial goodwill represented thereby.

83.     The Count I Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the INSURANCE KING mark to Insurance King's great and irreparable injury.

84.     In committing these wrongs, the Count I Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

85.     Upon information and belief, the Count I Defendants made substantial profits to which they are not entitled in law or equity.

86.     Upon information and belief, the Count I Defendants intend to continue their infringing acts, unless restrained by this Court.

20

4813-8452-6802.1

87.     The Count I Defendants' acts damaged and will continue to damage Insurance King, and Insurance King has no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
**(Lanham Act Section 32 (15 U.S.C. § 1114))**
**(Accurate, Zubi, and Ghouleh: "Count II Defendants")**

88.     Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

89.     Insurance King owns all rights, title and interest in and to the INSURANCE KING mark and the Insurance King Registration, and the mark is protected under the Lanham Act.

90.     The Count II Defendants, without Insurance King's consent, adopted and used the INSURANCE KING mark in interstate commerce, in connection with their online advertising.

91.     The Count II Defendants, without Insurance King's consent, also adopted and used the term KING OF INSURANCE, which merely transposed the INSURANCE KING mark, in interstate commerce in connection with its online advertising.

92.     The Count II Defendants' use of the INSURANCE KING mark and the term KING OF INSURANCE has caused confusion, deception, and mistake by creating the false and misleading impression that Accurate's services originated from Insurance King, were associated or connected with Insurance King, or had the sponsorship, endorsement, or approval of Insurance King.

93.     The Count II Defendants' activities caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers and,

21

4813-8452-6802.1

additionally, cause injury to Insurance King's goodwill and reputation as symbolized by the INSURANCE KING Registration, for which Insurance King has no adequate remedy at law.

94.     At the time the Count II Defendants adopted and used the INSURANCE KING mark, the Count II Defendants were aware that the INSURANCE KING mark and Insurance King Registration were owned by Insurance King and that Insurance King had used the INSURANCE KING mark in connection with the sale of insurance and insurance-related services.

95.     The Count II Defendants' actions are and were done with intentional, willful, and malicious intent to trade on the goodwill associated with the INSURANCE KING mark and Insurance King Registration.

96.     The Count II Defendants' use of the INSURANCE KING mark and the term KING OF INSURANCE caused actual confusion among consumers and deceived and mislead consumers regarding the source, sponsorship, authenticity and quality of Accurate's services.

97.     The Count II Defendants' intent in using the INSURANCE KING mark and the term KING OF INSURANCE was to confuse, deceive and mislead consumers.

98.     Insurance King has suffered and will continue to suffer injury and damages as a result of Accurate's misconduct.  In particular, the Count II Defendants caused and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Insurance King's goodwill.  Consequently, Insurance King is entitled to injunctive relief and to recover the Count II Defendants' profits, actual damages, trebled profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

22

4813-8452-6802.1

## COUNT III
## COPYRIGHT INFRINGEMENT
### (Copyright Act 17 U.S.C. § 101, *et seq.* )
### (Accurate, Save-A-Lot, Zubi, and Ghouleh: "Count III Defendants")

99.     Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

100.     Insurance King owns the Insurance King Mascot Copyright and have duly registered the Insurance King Mascot with the United State Copyright Office.

101.     The Count III Defendants, through the actions described in this Complaint, violated Insurance King's exclusive rights in the Insurance King Mascot Copyright by displaying the Infringing Design.  Specifically, the Count III Defendants had access to Insurance King's Mascot design and used a substantially similar design (the Infringing Design) in their billboards without permission or authorization from Insurance King, and without legal justification of any kind whatsoever.

102.     The Count III Defendants' actions are and were intentional and willful.

103.     The Count III Defendants' acts of copyright infringement were the result of unlawful widespread advertising activities to the public designed to promote their businesses and disparage Insurance King.

104.     The Count III Defendants misappropriated Insurance King's advertising ideas by promoting a design that is substantially similar to the Insurance King Mascot design.  Moreover, the advertising injury to the Insurance King arises out of the Count III Defendants' advertising activities.

105.     The Count III Defendants are still unlawfully displaying the Infringing Design as of the filing of this Second Amended Complaint.

23

106.     The Count III Defendants' acts of copyright infringement have caused damage to Insurance King in an amount to be proved at trial.

## COUNT IV
## FEDERAL FALSE AND/OR DECEPTIVE ADVERTISING (Websites)
## (Lanham Act Section 43(a) (15 U.S.C. § 1125(a))
## (Accurate, Save-A-Lot, Zubi, and Ghouleh: "Count IV Defendants")

107.     Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

108.     The Count IV Defendants have disseminated in interstate commerce advertising materials that are untrue and/or misleading, and have used a false description of their services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

109.     Accurate and Save-A-Lot have, in connection with the services they offer on their websites, intentionally published false or misleading statements as to the quality of service received from each respective company.  The alleged customer testimonials – which are identical on both websites – cannot be true testimonials as to both Accurate and Save-A-Lot.

110.     By publishing these false commercial claims in interstate commerce, the Count IV Defendants are engaging in a deceptive act or practice intended to cause consumers to rely on the material deception and believe that both Accurate and Save-A-Lot obtained these reviews from satisfied customers.

111.     Further, Accurate's website contains the literally false statement that Accurate has the lowest SR-22 Insurance rates.  This claim is likely to materially deceive consumers into believing that no other company can provide an SR-22 for a lower price when, in fact, Insurance King's pricing can, depending on the insured, be equal to or less than Accurate's.

24

112.    Accurate's website also makes a money-back guarantee ("We guarantee you won't be disappointed with our results") that has entered interstate commerce, yet Accurate does not actually provide a refund to dissatisfied customers.  Instead, Accurate charges a fee to customers who try to cancel their policy.  This literally false claim of guaranteed satisfaction is intended to materially deceive insurance consumers into purchasing a policy through Accurate.

113.    The Count IV Defendants' acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes or represents the insurance services, customer satisfaction, and pricing offered by Save-A-Lot and Accurate, as well as the value of the services and pricing offered by Insurance King, with the intent to cause confusion, and mistake, or to deceive the public.  The wrongful acts identified herein, are likely to cause injury and/or have caused injury to Insurance King.

114.    The Count IV Defendants threaten to continue the conduct complained of herein, and unless enjoined, will continue such conduct causing irreparable harm to Insurance King for which Insurance King has no adequate remedy at law.  Insurance King has also suffered damages for this conduct in an amount yet to be determined.  Insurance King is entitled to the profits earned by the Count IV Defendants that are attributable to the wrongful acts outlined herein as a remedy.

115.    As a direct and proximate result of The Count IV Defendants' conduct, Insurance King is entitled to damages and a permanent injunction enjoining and restraining The Count IV Defendants and their respective agents and assigns from engaging in the above-mentioned acts.

25

**COUNT V**
**FEDERAL FALSE AND/OR DECEPTIVE ADVERTISING (Billboards)**
**(Lanham Act Section 43(a) (15 U.S.C. § 1125(a))**
**(Accurate, Save-A-Lot, Zubi, and Ghouleh: "Count V Defendants")**

116.     Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

117.     The Count V Defendants have disseminated in interstate commerce advertising materials that are untrue and/or misleading, and have used a false description of their services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

118.     The Count V Defendants have disseminated literally false statements in advertisements by advertising that Save-A-Lot provides automobile insurance when, in fact, all policies are actually through Accurate.  Moreover, Accurate represents low-price automobile policies when, in fact, some consumers must purchase multiple policies in order to obtain sufficient coverage.

119.     The Count V Defendants have also disseminated misleading statements as to the lack of agency or policy fees.  These statements are likely to mislead consumers as to the lack of any fees arising from the insurance agency or from the policy when, in fact, the agency charges service fees for SR-22 policies, as well as cancellation fees.

120.     The Count V Defendants have also disseminated into interstate commerce misleading statements which convey the false impression that they offer inexpensive insurance. However, they do not disclose to consumers that they are actually going to be contracting with Accurate Payment to finance their insurance.  The Count V Defendants also do not disclose to consumers the exorbitant rate of interest the consumer will be charged by Accurate Payment, the hefty cancellation fees they will incur, the policy fee they will incur, or that the insurance

26

4813-8452-6802.1

coverage they receive could be split between two separate insurance companies (thus doubling the per-policy fees charged to the consumer). Thus, while Save-A-Lot and Accurate may provide "cheap" insurance, The Count V Defendants' scheme results in consumers being materially deceived as to pricing.

121. The Count V Defendants have disseminated misleading statements by advertising auto insurance "as low as $19 mo." and not to "pay a King's Ransom!" Neither company offers auto insurance for $19 per month (only SR-22 non-owner policies) and, regardless, Insurance King's SR-22 pricing is as low as $90 per year - less than $19 per month. These statements are likely to mislead consumers not only as to Save-A-Lot's and Accurate's insurance rates, but also as to Insurance King's rates which, based on the advertisement, are so high they are akin to a ransom demand.

122. The above statements constitute false or misleading statements of fact and false or misleading representations as to their services, which misrepresent the nature of their services.

123. Because of the Count V Defendants' materially false statements, consumers are likely to be deceived into believing that they can obtain auto insurance for $19 per month; that they can obtain that insurance without paying any additional fees; and that Insurance King's pricing is exorbitant.

124. Insurance King is harmed by the Count V Defendants' false statements because consumers, being deceived into thinking that two separate companies offer $19, no-fee auto insurance, are falsely led to believe that Insurance King's insurance policies are extremely over-priced. In reality, Accurate and Save-A-Lot do not offer any automobile insurance policy for $19 per month, and Insurance King's SR-22 non-owner's pricing is less than $19 per month over a 12-

27

month period. These misconceptions by consumers have caused revenue loss for Insurance King. Further, Insurance King has suffered reputational harm from the misleading statements.

125. The Count V Defendants' acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes or represents the insurance services and pricing offered by Save-A-Lot and Accurate, as well as the value of the services and pricing offered by Insurance King, with the intent to cause confusion, and mistake, or to deceive the public.

126. The Count V Defendants threaten to continue the conduct complained of herein, and unless enjoined, will continue such conduct causing irreparable harm to Insurance King for which Insurance King has no adequate remedy at law. Insurance King has also suffered damages for this conduct in an amount yet to be determined. Insurance King is entitled to the profits earned by the Count V Defendants that are attributable to the wrongful acts outlined herein as a remedy.

127. As a direct and proximate result of the Count V Defendants' conduct, Insurance King is entitled to damages and a permanent injunction enjoining and restraining Defendants and their respective agents and assigns from engaging in the above-mentioned acts.

**COUNT VI**
**FEDERAL FALSE AND/OR DECEPTIVE ADVERTISING (PPC Advertising)**
**(Lanham Act Section 43(a) (15 U.S.C. § 1125(a))**
**(Accurate, Zubi, and Ghouleh: "Count VI Defendants")**

128. Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

28

4813-8452-6802.1

129. The Count VI Defendants have disseminated in interstate commerce advertising materials that are untrue and/or misleading, and have used a false description of their services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

130. Through the PPC advertising, the Count VI Defendants have conveyed the false impression that Accurate and Insurance King are related. An advertisement for "Insurance King" or "King of Insurance" that leads to an Accurate website constitutes a commercial claim that is ambiguous and which is misleading and likely to materially deceive consumers.

131. The Count VI Defendants' acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes or represents the insurance services and pricing offered by Save-A-Lot and Accurate, as well as the value of the services and pricing offered by Insurance King, with the intent to cause confusion, and mistake, or to deceive the public.

132. The Count VI Defendants threaten to continue the conduct complained of herein, and unless enjoined, will continue such conduct causing irreparable harm to Insurance King for which Insurance King has no adequate remedy at law. Insurance King has also suffered damages for this conduct in an amount yet to be determined. Insurance King is entitled to the profits earned by the Count VI Defendants that are attributable to the wrongful acts outlined herein as a remedy.

133. As a direct and proximate result of The Count VI Defendants' conduct, Insurance King is entitled to damages and a permanent injunction enjoining and restraining Defendants and their respective agents and assigns from engaging in the above-mentioned acts.

29

## COUNT VII
## ILLINOIS DECEPTIVE TRADE PRACTICES
### (815 Ill. Comp. Stat. § 510/1 *et seq.*)
### (All Defendants)

134.    Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

135.    Defendants' use of the INSURANCE KING mark has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from Insurance King, are associated or connected with Insurance King, or have the sponsorship, endorsement, or approval of Insurance King.

136.    One such example involved a potential customer who searched for "Insurance King" online and called the phone number from the resulting ad (which, unbeknownst to the potential customer, was an ad for Accurate) asked the representative who answered the call, "Is this Insurance King?" The representative responded "Yes." However, the consumer was later issued a policy from Accurate, and then tried to make a payment at an Insurance King location. The use of the INSURANCE KING mark in an Accurate ad created a misunderstanding as to the source of the insurance services.

137.    In addition, Defendants' billboard advertisements have resulted in the disparagement of the services or business of Insurance King through the use of false or misleading representations of fact.

138.    Defendants' misleading statements on their billboard advertisements that Insurance King's pricing amounts to a "ransom" when, in fact, Insurance King's pricing is equal to or better than Defendants', which constitutes a false or misleading statement regarding the quality of Insurance King's goods or services. This is compounded by Defendants' misleading

4813-8452-6802.1

statements that they offer automobile insurance for $19 per month, which, by comparison, would make Insurance King's automobile insurance pricing seem exorbitant. Defendants do not, in fact, offer automobile insurance for $19 per month.

139.    Defendants have disseminated literally false statements in advertisements by advertising that Save-A-Lot provides automobile insurance when, in fact, all policies are actually through Accurate. Moreover, Accurate represents low-price automobile policies when, in fact, some consumers must purchase multiple policies in order to obtain sufficient coverage.

140.    Defendants have also disseminated misleading statements as to their ability to offer inexpensive insurance. However, they do not disclose to consumers that they are actually going to be contracting with Accurate Payment to finance their insurance. Defendants also do not disclose to consumers the exorbitant rate of interest the consumer will be charged by Accurate Payment, the hefty cancellation fees they will incur, the policy fee they will incur, or that the insurance coverage they receive could be split between two separate insurance companies (thus doubling the per-policy fees charged to the consumer). Thus, while Save-A-Lot and Accurate may provide "cheap" insurance, Defendants' scheme results in consumers being overcharged and confused as to why.

141.    Further, consumers who visit Accurate's website will believe Accurate has the lowest-priced SR-22s – a false statement that has the effect of disparaging Insurance King's goods and services. This claim is likely to materially deceive consumers into believing that no other company can provide an SR-22 for a lower price when, in fact, Insurance King's pricing can, depending on the insured, be equal to or less than Accurate's.

31

142. Accurate's website also makes a money-back guarantee ("We guarantee you won't be disappointed with our results."), yet Accurate does not actually provide a refund to dissatisfied customers. Instead, Accurate charges a fee to customers who try to cancel their policy. This literally false claim of guaranteed satisfaction is intended to materially deceive insurance consumers into purchasing a policy through Accurate.

143. Accurate and Save-A-Lot have, in connection with the goods and services they offer on their websites, intentionally published false or misleading statements as to the quality of service received from each respective company. The alleged customer testimonials – which are identical on both websites – cannot be true testimonials as to both Accurate and Save-A-Lot. By publishing these claims, Accurate and Save-A-Lot are engaging in a deceptive act or practice intended to cause consumers to rely on the material deception and believe that both Accurate and Save-A-Lot obtained these reviews from satisfied customers.

144. Defendants' acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes or represents the insurance services and pricing offered by Save-A-Lot and Accurate, as well as the value of the services and pricing offered by Insurance King, with the intent to cause confusion, and mistake, or to deceive the public.

145. As a direct and proximate result of Defendants' conduct, Insurance King is entitled to damages and a permanent injunction enjoining and restraining Defendants and their respective agents and assigns from engaging in the above-mentioned acts. Insurance King is entitled to the profits earned by the Count VII Defendants that are attributable to the wrongful acts outlined herein as a remedy.

32

146. Insurance King has sustained injury to its business' reputation and goodwill, and Defendants have unlawfully derived income and profits from its wrongful acts.

147. Unless enjoined by this Court, these acts by Defendants will continue to violate Insurance King's rights and cause injury to Insurance King.

148. Insurance King has no adequate remedy at law.

149. By virtue of the aforementioned acts, Defendants have engaged in conduct in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*.

**COUNT VIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 Ill. Comp. Stat. § 505/1 et seq.)**
**(All Defendants)**

150. Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

151. The Illinois Consumer Fraud and Deceptive Business Practices Act expressly prohibit "any practice described in Section 2 of the Uniform Deceptive Practices Act." 815 ILCS § 505/2.

152. Defendants are using the INSURANCE KING mark and the nearly-identical KING OF INSURANCE without permission from Insurance King, and thus willingly, knowingly, and intentionally violating Insurance King's rights by their unauthorized use, as to suggest to the public that there exists an association or affiliation between Insurance King and Defendants' services, or that Insurance King has sponsored or endorsed Defendants' services, when it has not. Defendants engage in this deceptive act with the intent that consumers will rely on the deception.

33

4813-8452-6802.1

153.    Further, Defendants' misleading statements that Insurance King's pricing amounts to a "ransom" when, in fact, Insurance King's pricing is equal to or better than Defendants', constitutes a false or misleading statement regarding the quality of Insurance King's goods or services.  This is compounded by Defendants' misleading statements designed to make consumers believe that they offer automobile insurance for $19 per month, which, by comparison, would make Insurance King's automobile insurance pricing seem exorbitant. Defendants do not, in fact, offer automobile insurance for $19 per month, and these deceptive practices are intended to make consumers rely on the misrepresentations.

154.    Further, Accurate Payment and Accurate have, in connection with goods and services, intentionally used the word "Accurate" to describe themselves, for the purpose of misleading consumers as to the companies' identities and the fact that the consumer has unknowingly agreed to use Accurate Payment to fund the insurance policy and fees at an exorbitant interest rate.  Accurate Payment and Accurate engage in this deceptive practice with the intent of causing consumers to rely on the deception.

155.    Accurate has also had employees falsely state that Accurate was Insurance King when answering the phone.  This deceptive practice is intended to make consumers rely on the statement and believe they are obtaining an insurance policy through Insurance King

156.    Defendants' conduct causes and is likely to continue to cause consumer confusion as to the origin, quality, characteristics, and source of its services.

157.    The public and the market generally, by way of Defendants' acts alleged herein, will be harmed by the consumer confusion caused by Defendants' misrepresentation of its services.

34

4813-8452-6802.1

158.    By their acts, Defendants have made and will continue to make substantial profits and gains to which they are not entitled to receive. Insurance King is entitled to actual damages and the profits earned by the Defendants that are attributable to the wrongful acts outlined herein as a remedy.

159.    Insurance King, by way of Defendants' acts alleged herein, has suffered, and will continue to suffer, damage and competitive injury to its business, reputation, and goodwill.

160.    By virtue of the aforementioned acts, Defendants have engaged in conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*

## COUNT IX
## COMMON LAW UNFAIR COMPETITION
### (All Defendants)

161.    Insurance King incorporates the foregoing paragraphs by reference as though fully set forth herein.

162.    Insurance King owns all right, title and interest in and to the INSURANCE KING mark.

163.    Defendants' use of the INSURANCE KING mark has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from Insurance King, or are associated or connected with Insurance King, or have the sponsorship, endorsement, or approval of Insurance King.

164.    The natural and probable tendency and effect of Defendants' conduct is to deceive the public so as to pass off the services or business of Defendants as and for that of Insurance

35

King or its subsidiaries. Defendants have caused and are likely to continue to cause substantial injury to the public and to Insurance King, and Insurance King is entitled to injunctive relief and to recover actual damages, costs, and reasonable attorneys' fees.

165.    Defendants' wrongful conduct was willful and deliberate or recklessly indifferent to the rights of Insurance King, warranting an award of punitive damages under Illinois common law.

## PRAYER

**WHEREFORE**, Plaintiff prays the Court enter judgment in its favor and award them relief as follows:

1.  That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the INSURANCE KING mark and any other name or mark confusingly similar to the INSURANCE KING mark, including but not limited to, KING OF INSURANCE;

2.  That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the Infringing Design and require all advertisements with the Infringing Design be destroyed;

3.  That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other person in active concert with Defendants from making false, misleading and deceptive statements in advertisements, and remove all of Defendants' billboards containing false, misleading, or deceptive statements;

36

4. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon Insurance King within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunctions;

5. That the Court order that Defendants take steps to inform its current and past customers or other people confused by Defendants' wrongdoing that Insurance King is not affiliated with Defendants or responsible for Defendants' obligations;

6. That the Court order that Defendants take steps to inform its current and past customers or other people confused by Defendants' wrongdoing that Accurate Payment is a company owned by the same owners as Accurate and Save-A-Lot;

7. That pursuant to 15 USC § 1117 (a), Insurance King be awarded all damages incurred as a direct and proximate cause of Defendants' unlawful conduct as well as any profits earned by Defendants attributable to the wrongful conduct alleged herein;

8. That Insurance King recover from Defendants exemplary and punitive damages, based on its willfulness and/or reckless indifference to Insurance King's trademark rights, available under Illinois common law;

9. That Insurance King recover the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

10. That Defendants pay Insurance King's reasonable attorneys' fees, based on its willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a) and 815 Ill. Comp. Stat. §510/3;

4813-8452-6802.1

11. That Insurance King be awarded either: a) Insurance King's actual damages and Defendants' profits, gains or advantages of any kind attributable to Defendants' infringement of Insurance King's Copyright; or b) alternatively, statutory damages of up to $150,000 per copyrighted work infringed pursuant to 17 U.S.C. § 504;

12. That Defendants be required to account for all profits, income, receipts, or other benefits derived by Defendant as a result of its unlawful conduct;

13. That Plaintiff be awarded its costs, expenses and attorneys' fees pursuant to 17 U.S.C. § 505;

14. That Insurance King be awarded compensatory damages, disgorged profits, punitive damages, and attorneys' fees for Defendants' willful and intentional violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

15. That Insurance King be awarded prejudgment interest;

16. That Insurance King be awarded post-judgment interest;

17. That because of the exceptional nature of this case resulting from Defendants' deliberate and willful infringing actions, the Court award to Insurance King all reasonable attorneys' fees, costs, and disbursements incurred by them as a result of this action pursuant to 15 U.S.C. §1117(a); and

18. That the Court grant Insurance King such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Insurance King Agency, Inc., respectfully demands a

38

4813-8452-6802.1

trial by jury of all issues so triable by a jury.


DATED: January 12, 2021                          Respectfully submitted,


                                           *s/ Bryan P. Sugar*
                                           Bryan P. Sugar
                                           LEWIS BRISBOIS BISGAARD & SMITH LLP
                                           550 West Adams Street, Suite 300
                                           Chicago, Illinois 60661
                                           Tel. 312.345.1718
                                           Fax 312.345.1778
                                           Bryan.Sugar@lewisbrisbois.com


                                           Attorney for Plaintiff Insurance King Agency,
                                           Inc.

4813-8452-6802.1

CERTIFICATE OF LAWYER AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1.      On January 12, 2021, the Second Amended Complaint was electronically filed with the District Court Clerk via CM/ECF filing system.

2.      Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned further certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter as of this date, except those newly added and for which summons must be issued.

Respectfully submitted,

By: *s/ Bryan P. Sugar*
     Bryan P. Sugar
     **LEWIS BRISBOIS BISGAARD & SMITH LLP**
     550 West Adams Street, Suite 300
     Chicago, IL 60661
     312-345-1718
     Bryan.Sugar@lewisbrisbois.com

40

4813-8452-6802.1